UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-21417-BLOOM/Elfenbein

KEVIN O'LEARY,

    Plaintiff,

v.

BENJAMIN ARMSTRONG,

    Defendant.

_____/

**ORDER GRANTING MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff Kevin O'Leary's Motion for Entry of Final Default Judgment ("Motion"), ECF No. [15], filed on June 5, 2025. The Court has reviewed the Motion, the record, and is otherwise fully advised.

**I.   FACTUAL BACKGROUND**

On March 26, 2025, Plaintiff filed a seven-count Complaint against Defendant Benjamin Armstrong. ECF No. [1]. The Complaint alleged six counts of Defamation *Per Se* (Counts I-VI) and one count of Publication of Private Facts (Count VII), based on a series of posts Defendant made about Plaintiff between March 17, 2025 and March 21, 2025. ECF No. [1]. Defendant was served with a copy of the Summons and Complaint on March 28, 2025, generating an April 18, 2025 deadline. ECF No. [5]. On April 21, 2025,[1] Defendant filed a Motion for a Continuance, stating that he has "been incarcerated since March 25, 2025" and "will be going to an in-patient mental health facility" after "serving a 70-day sanction." ECF No. [7]. The same day, the Court

---

[1] Although Defendant's Motion for a Continuance was docketed on April 21, 2025, in accordance with the prison mailbox rule, *pro se* prisoner court filings are deemed filed on the date they are delivered to prison authorities for mailing. *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015). Accordingly, the Motion was filed before Defendant's deadline to respond to the Complaint had passed. *See* ECF No. [5].

granted Defendant an extension and ordered him to respond to the Complaint by May 2, 2025. ECF No. [8]. The Court also ordered the Clerk of the Court to mail a copy of the April 21, 2025 order to him at the address listed in his motion. *Id.* Defendant failed to meet the May 2, 2025 deadline and did not request additional time to do so.

On May 5, 2025, Plaintiff filed a Motion for Clerk's Entry of Default as to Defendant. ECF No. [12]. The Clerk entered default on May 6, 2025. ECF No. [13]. The same day, the Court entered an Order on Default Judgment Procedure. ECF No. [14]. To date, Defendant has not moved to set aside the Clerk's Default. Because default has been entered against Defendant, he is deemed to have admitted Plaintiff's well-pleaded allegations of fact. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).

The following facts are deemed admitted by Defendant. On August 24, 2019, while Plaintiff's wife, Linda O'Leary ("Ms. O'Leary"), was driving the O'Learys' boat, they collided with another vessel, resulting in the death of two people. ECF No. [1] ¶ 43. Ms. O'Leary was not impaired, and at the time of the incident, she was a highly experienced boater operating the vessel cautiously and with due care and attention. *Id.* The collision occurred with a completely unlit vessel, operating in violation of basic safety standards on a moonless night—making it virtually invisible. *Id.* Following the collision, Ms. O'Leary was charged with a regulatory offense: careless operation of a vessel under the Small Vessel Regulations of the Canada Shipping Act. *Id.* ¶ 44. She was not charged with impaired driving or any other alcohol-related offense. *Id.* Plaintiff was not charged with any crime or infraction arising from the accident. *Id.* After a 13-day trial in which a Canadian court heard extensive testimony, Ms. O'Leary was acquitted of the regulatory charge. *Id.* ¶ 45. The publicly available evidence made clear that Plaintiff was not operating the boat, was never charged, and that Ms. O'Leary was acquitted of all charges. *Id.* ¶ 54.

Case No. 25-cv-21417-BLOOM/Elfenbein

On March 17, 2025 at 8:49 a.m., Defendant published a post on his X[2] account, stating "[y]ou guys think I'm kidding about all this stuff and all these claims. There is a reason my life is actually in danger. Kevin O'Leary has already verifiably murdered one couple in Toronto." *Id.* ¶¶ 59-60. The post was published to a worldwide audience on X and, as of March 26, 2025, it had been viewed about 31,000 times. *Id.* ¶ 62. The post was intended to convey, and understood by readers of ordinary intelligence as conveying, the factual accusation that Plaintiff committed murder. *Id.* ¶ 65. The post is false and the allegation that Plaintiff murdered individuals harms his reputation so as to lower him in the estimation of the community and deter third persons from associating or dealing with him. *Id.* ¶ 66. Publication of the post caused harm to Plaintiff's reputation. *Id.* ¶ 68. Defendant published the post knowing it was false or with reckless disregard for the truth, in that he was aware at the time of publication that the statement he made was false or, at minimum, had a high degree of awareness that the statement was probably false. *Id.* ¶ 69. As a direct and proximate result of the tweet, Plaintiff has suffered damages, including injury to reputation, embarrassment, humiliation, emotional distress, and economic damages. *Id.* ¶ 70.

On March 19, 2025 at 12:32 p.m., Defendant published a post on his X account, stating "[d]oesn't everybody think it's weird that I've been publicly calling both @gordonlawltd & @kevinolearytv murderers and yet not a single word or legal action? It's almost like they 'can't' because a lawsuit would open up their actual crimes and they know it." *Id.* ¶¶ 72-73. The post was published to a worldwide audience on X and, as of March 26, 2025, it had been viewed nearly 15,000 times. *Id.* ¶ 74. The post was intended to convey, and understood by readers of ordinary intelligence as conveying, the factual accusation that Plaintiff committed murder. *Id.* ¶ 77. The post is false and the allegation that Plaintiff murdered individuals harms his reputation so

---

[2] The Complaint refers to the website as "X/Twitter." ECF No. [1]. For clarity, the Court will refer to the website as "X."

as to lower him in the estimation of the community and deter third persons from associating or dealing with him. *Id.* ¶ 78. Publication of the post caused harm to Plaintiff's reputation. *Id.* ¶ 80. Defendant published the post knowing it was false or with reckless disregard for the truth, in that he was aware at the time of publication that the statement he made was false or, at minimum, had a high degree of awareness that the statement was probably false. *Id.* ¶ 81. As a direct and proximate result of the post, Plaintiff has suffered damages, including injury to reputation, embarrassment, humiliation, emotional distress, and economic damages. *Id.* ¶ 82.

On March 19, 2025 at 12:42 p.m., Defendant published a post on his X account, stating "[h]ave you ever wanted to call a real life murderer?! You can NOW! @kevinolearytv is waiting for your call." *Id.* ¶¶ 84-85. The post was published to a worldwide audience on X, and as of March 19, 2025, it had been viewed over 18,000 times. *Id.* ¶ 86. The post is no longer available online as it was removed for violating X's terms of service. *Id.* The post was intended to convey, and understood by readers of ordinary intelligence as conveying, the factual accusation that Plaintiff committed murder. *Id.* ¶ 89. The post is false and the allegation that Plaintiff murdered individuals harms his reputation so as to lower him in the estimation of the community and deter third persons from associating or dealing with him. *Id.* ¶ 90. The post caused harm to Plaintiff's reputation. *Id.* ¶ 92. Defendant published the post knowing it was false or with reckless disregard for the truth, in that he was aware at the time of publication that the statement he made was false or, at minimum, had a high degree of awareness that the statement was probably false. *Id.* ¶ 93. As a direct and proximate result of the post, Plaintiff has suffered damages, including injury to reputation, embarrassment, humiliation, emotional distress, and economic damages. *Id.* ¶ 94.

On March 20, 2025 at 11:32 AM, Defendant published a post on his X account stating "[t]hat's right guys – I was forced to delete the murderer @kevinolearytv's phone number by X. I was in X jail for 12 hours. Meaning I guess I'm an X-Con now." *Id.* ¶¶ 96-97. The post was

published to a worldwide audience on X and, as of March 26, 2025, it had been viewed over 9,000 times. *Id.* ¶ 98. The post was intended to convey, and understood by readers of ordinary intelligence as conveying, the factual accusation that Plaintiff committed murder. *Id.* ¶ 101. The post is false and the allegation that Plaintiff murdered individuals harms his reputation so as to lower him in the estimation of the community and deter third persons from associating or dealing with him. *Id.* ¶ 102. The post caused harm to Plaintiff's reputation. *Id.* ¶ 104. Defendant published the post knowing it was false or with reckless disregard for the truth, in that he was aware at the time of publication that the statement he made was false or, at minimum, had a high degree of awareness that the statement was probably false. *Id.* ¶ 105. As a direct and proximate result of the post, Plaintiff has suffered damages, including injury to reputation, embarrassment, humiliation, emotional distress, and economic damages. *Id.* ¶ 106.

On March 20, 2025 at 12:27 p.m., Defendant published a post on his X account stating, "[h]ey how is another free day @kevinolearytv? Do you ever think [of] the couple you murdered?" *Id.* ¶ 109. The post was published to a worldwide audience on X and, as of March 26, 2025, it had been viewed over 10,000 times. *Id.* ¶ 110. The post was intended to convey, and understood by readers of ordinary intelligence as conveying, the factual accusation that Plaintiff committed murder. *Id.* ¶ 113. The post is false and the allegation that Plaintiff murdered individuals harms his reputation so as to lower him in the estimation of the community and deter third persons from associating or dealing with him. *Id.* ¶ 114. The post caused harm to Plaintiff's reputation. *Id.* ¶ 116. Defendant published the post knowing it was false or with reckless disregard for the truth, in that he was aware at the time of publication that the statement he made was false or, at minimum, had a high degree of awareness that the statement was probably false. *Id.* ¶ 117. As a direct and proximate result of the post, Plaintiff has suffered damages, including

injury to reputation, embarrassment, humiliation, emotional distress, and economic damages. *Id.* ¶ 118.

On March 21, 2025 at 8:55 a.m., Defendant published a post on his X account stating, "[d]aily reminder that @kevinolearytv and his wife Linda O'Leary murdered a couple and paid millions to cover it up. Not a single cease and desist has been sent to me Kev. Wonder why?" *Id.* ¶ 121. The post was published to a worldwide audience on X and, as of March 26, 2025, it had been viewed over 6,500 times. *Id.* ¶ 122. The post was intended to convey, and understood by readers of ordinary intelligence as conveying, the factual accusation that Plaintiff committed murder. *Id.* ¶ 125. The post is false and the allegation that Plaintiff murdered individuals harms his reputation so as to lower him in the estimation of the community and deter third persons from associating or dealing with him. *Id.* ¶ 126. The post caused harm to Plaintiff's reputation. *Id.* ¶ 127. Defendant published the post knowing it was false or with reckless disregard for the truth, in that he was aware at the time of publication that the statement he made was false or, at minimum, had a high degree of awareness that the statement was probably false. *Id.* ¶ 129. As a direct and proximate result of the post, Plaintiff has suffered damages, including injury to reputation, embarrassment, humiliation, emotional distress, and economic damages. *Id.* ¶ 130.

On March 19, 2025, Armstrong publicly disclosed Defendant's personal cell phone number on X without Plaintiff's knowledge or consent. *Id.* ¶ 132. Defendant encouraged his followers to harass Plaintiff. *Id.* ¶ 133. Defendant's disclosure was intended to provoke public attention and harassment, and to subject Plaintiff to ridicule, threats, and disruption. *Id.* As such, the release of his cell phone number was offensive. *Id.* Following the disclosure, Plaintiff was flooded with unwanted communications causing him damage. *Id.* ¶ 136. Plaintiff has suffered damages as a direct and proximate result of Defendant's wrongful disclosure. *Id.* ¶ 137.

## II. LEGAL STANDARD

### a. Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "While 'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' a defaulted defendant is deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact.'" *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Thus, before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint . . . actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

### b. Damages

Federal Rule of Civil Procedure 55(b)(2)(B) provides that the Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]" Fed. R. Civ. P. 55(b)(2)(B). "Although an evidentiary hearing is typically required to determine the amount of damages, '[a]n evidentiary hearing is not a *per se* requirement' and in 'limited circumstances' will not be required" where "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Pott v. World Capital Properties, Ltd.*, Case No. 21-cv-23942, 2021 WL 9204019, at *3 (S.D. Fla. Dec. 30, 2021) (quoting *S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 & n.13 (11th Cir. 2005)); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543-44 (11th Cir. 1985).

### III. DISCUSSION

Under Florida law, the elements of defamation are "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). Florida law also provides that a statement may be defamatory *per se*, meaning the "statement is 'so obviously defamatory' and 'damaging to [one's] reputation,' [that] it generally 'gives rise to an absolute presumption both of malice and damage.'" *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)).

For example, "[f]alse statements which suggest that someone has committed a dishonest or illegal act are defamatory *per se*." *Id.* (quoting *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541-42 (M.D. Fla. 1993)). "A false statement which suggests that someone has committed a dishonest or illegal act is per se actionable without proof of special damages." *Carroll v. TheStreet.com, Inc.*, No. 11-cv-81173, 2012 WL 13134547, at *3 (S.D. Fla. May 25, 2012) (citing *Fun Spot of Fla., Inc. v. Magical Midway of Cent. Fla., Ltd.*, 242 F. Supp. 2d 1183, 1197 (M.D. Fla. 2002)).

"Florida has adopted the Restatement's test of invasion of privacy based on publication of private facts." *Leach v. Dist. Bd. of Trs. of Palm Beach*, 244 F. Supp. 3d 1334, 1339 (S.D. Fla. 2017). To state a claim for public disclosure of private facts under Florida law, "a plaintiff must allege (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Id.*

In order to satisfy the "publication" element, the fact must be "made public by communicating it to the public at large or to so many people that the matter must be regarded as

substantially certain to become one of public knowledge." *Id.* (citing Restatement (Second) of Torts § 652D cmt. a (1977)). Publication "in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term." *Id.* (quoting Restatement (Second) of Torts § 652D cmt. a).

A defendant is not liable if he "merely gives further publicity to information about the plaintiff that is already public." Restatement (Second) of Torts § 652D cmt. b. For example, a plaintiff "normally cannot complain when his photograph is taken while he is walking down the public street and is published in the defendant's newspaper." *Id.* However, "when a photograph is taken without the plaintiff's consent in a private place, or one already made is stolen from his home, the plaintiff's appearance that is made public when the picture appears in a newspaper is still a private matter, and his privacy is invaded." *Id.*

To determine whether the publication of private facts is "offensive," the plaintiff's "interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizen." *Id.* § 652D cmt. c. A "minor and moderate annoyance" would not be sufficient to state a cause of action for publication of private facts. *Id.* "It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises." *Id.*

When the published fact is true, "it is not enough that the publicity would be highly offensive to a reasonable person. The common law has long recognized that the public has a proper interest in learning about many matters." *Id.* § 652D cmt. d. "When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy." *Id.* "In determining what is a matter of legitimate public interest, account must be taken of the customs and conventions of the community." *Id.* § 652D cmt. h. Voluntary public figures "cannot complain

when he is given publicity that he has sought, even though it may be unfavorable to him." *Id.* § 652D cmt. e. However, a line must be drawn "when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern." *Id.* § 652D cmt. h.

The Court addresses each of the posts in turn.

a. **Count I:**

On March 17, 2025 at 8:49 a.m., Defendant posted on X, "[y]ou guys think I'm kidding about all this stuff and all these claims. There is a reason my life is actually in danger. Kevin O'Leary has already verifiably murdered one couple in Toronto." ECF No. [1] ¶ 61. Defendant has admitted that the statement was (1) published; (2) false; (3) made with knowledge or reckless disregard as to the falsity of the statement; and (4) that Plaintiff suffered actual damages.

Regarding whether the statement was defamatory, "[d]efamation encompasses both libel and slander . . . Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements." *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 n.2 (S.D. Fla. 2014) (quoting *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n.11 (S.D. Fla. 2006)), *aff'd* No. 14-13855 (11th Cir. Feb. 17, 2015). A published statement is libelous *per se* if, *inter alia*, "it charges that a person has committed an infamous crime." *Id.* (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)). "Crimes characterized as having an infamous nature are 'murder, perjury, piracy, forgery, larceny, robbery, arson, sodomy or buggery." *Id.* at 1237 n. 3 (quoting *King v. State*, 17 Fla. 183, 186 (Fla. 1879)). Because the statement falsely accused Plaintiff of murder, it was defamatory *per se. Id.* Plaintiff's well-pleaded factual allegations are sufficient to justify Count I.

10

    b. **Count II**

On March 19, 2025 at 12:32 p.m., Defendant published a post on his X account, stating "[d]oesn't everybody think it's weird that I've been publicly calling both @gordonlawltd & @kevinolearytv murderers and yet not a single word or legal action? It's almost like they 'can't' because a lawsuit would open up their actual crimes and they know it." ECF No. [1] ¶¶ 72-73. For the reasons stated above, Plaintiff's well-pleaded factual allegations are sufficient to justify Count II.

    c. **Count III**

On March 19, 2025 at 12:42 p.m., Defendant published a post on his X account, stating "[h]ave you ever wanted to call a real life murderer?! You can NOW! @kevinolearytv is waiting for your call." *Id.* ¶¶ 84-85. For the reasons stated above, Plaintiff's well-pleaded factual allegations are sufficient to justify Count III.

    d. **Count IV**

On March 20, 2025 at 11:32 a.m., Defendant published a post on his X account stating "[t]hat's right guys – I was forced to delete the murderer @kevinolearytv's phone number by X. I was in X jail for 12 hours. Meaning I guess I'm an X-Con now." *Id.* ¶¶ 96-97. For the reasons stated above, Plaintiff's well-pleaded factual allegations are sufficient to justify Count IV.

    e. **Count V**

On March 20, 2025 at 12:27 p.m., Defendant published a post on his X account stating, "[h]ey how is another free day @kevinolearytv? Do you ever think [of] the couple you murdered?" *Id.* ¶ 109. For the reasons stated above, Plaintiff's well-pleaded factual allegations are sufficient to justify Count V.

### f. Count VI

On March 21, 2025 at 8:55 a.m., Defendant published a post on his X account stating, "[d]aily reminder that @kevinolearytv and his wife Linda O'Leary murdered a couple and paid millions to cover it up. Not a single cease and desist has been sent to me Kev. Wonder why?" *Id.* ¶ 121. For the reasons stated above, Plaintiff's well-pleaded factual allegations are sufficient to justify Count VI.

### g. Count VII

On March 19, 2025 at 12:42 p.m., Defendant posted on X Plaintiff's private cell phone number and encouraged the public to harass Plaintiff, stating "[h]ave you ever wanted to call a real life murderer?! You can NOW! @kevinoleartyv is waiting for your call." *Id.* at 8-9. Following the post, Plaintiff began receiving communications from strangers who had obtained his number directly from Defendant's post. *Id.* ¶ 29. On March 20, 2025 at 11:32 a.m., Defendant stated he "was forced to delete the murderer @kevinolearytv's phone number by X. I was in X jail for 12 hours." *Id.* ¶ 35. As of March 19, 2025, the post had been viewed over 18,000 times. *Id.* ¶ 86. By posting Plaintiff's private phone number to a social media platform on which Defendant had one million followers,[3] Defendant published Plaintiff's private facts. The fact was offensive because, as a result, Plaintiff "was flooded with unwanted communications[.]" *Id.*¶ 135. Although Plaintiff is a public figure, his personal contact information is not of legitimate public concern. Therefore, Plaintiff's well-pleaded factual allegations are sufficient to justify Count VII.

---

[3] The Complaint states that Defendant "currently has one million followers" on "his former X/Twitter account," but also states "[t]oday" Defendant "has about 100,000 followers on X/Twitter[.]" ECF No. [1] ¶¶ 18, 21. It is therefore unclear whether Defendant posted Plaintiff's phone number to an account that had approximately one million followers or 100,000 followers. Regardless, by publicly posting Plaintiff's phone number on X, leading to the post garnering 18,000 views, Defendant's actions made it "substantially certain" that Plaintiff's phone number would become public. *See Leach*, 244 F. Supp. 3d at 1339.

Case No. 25-cv-21417-BLOOM/Elfenbein

### h. Damages

Although Plaintiff includes an expert report which analyzes the reputational damage Plaintiff suffered and provides a recommendation as to damages, the amount of damages is not capable of precise calculation. *See* ECF Nos. [15-4], [15-5]. It is the job of the Court to "determine[] the amount and character of damages to be awarded." *Miller v. Paradise of Port Rickey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). Therefore, a hearing will be required to determine the amount of damages. *Adolph Coors Co.*, 777 F.2d at 1543 (A default judgment "awarding cash damages [cannot] be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." (citations and quotations omitted)); *see also Sirer v. Aksoy,* No. 21-cv-22280, 2023 WL 3166453, at *1 (S.D. Fla. May 1, 2023) (awarding damages for defamation *per se* following evidentiary hearing).

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Entry of Final Default Judgment, **ECF No. [15],** is **GRANTED IN PART**.

2. An evidentiary hearing on damages will be held on **Friday, October 24, 2025, at 9:00 a.m.** in Courtroom 10-2 at the Wilkie D. Ferguson, Jr. Federal Courthouse, 400 North Miami Avenue, Miami, Florida 33130.

13

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 10, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Benjamin Armstrong
462 Fincher Rd.
Canton, GA 30114
PRO SE