**SEALED**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CIVIL DIVISION



CASE NO.: 25-cv-21417-BLOOM/Elfenbein

KEVIN O'LEARY,

    Plaintiffs

v.

BENJAMIN ARMSTRONG,

    Defendants
_____/

## MOTION TO SET ASIDE DEFAULT JUDGMENT

    Defendant Benjamin Armstrong respectfully moves this Court to set aside the default judgment entered against him in this defamation action brought by Plaintiff Kevin O'Leary. At the time he was served with the Complaint, Mr. Armstrong was incarcerated in Volusia County Jail, which severely limited his ability to respond. Shortly thereafter, on July 2, 2025, he was diagnosed with serious mental health conditions—including Bipolar disorder (unspecified), Narcissistic personality disorder, and Dissociative identity disorder—that further impaired his capacity to participate in the litigation. Since receiving treatment, Mr. Armstrong has made progress and is now competent to defend himself. Given these extraordinary circumstances, which constitute excusable neglect and good cause under Federal Rules of Civil Procedure 55(c) and 60(b), and considering that Plaintiff must prove actual malice—a subjective mental state that Mr. Armstrong's conditions may negate—justice and judicial economy strongly favor vacating the default judgment and allowing this case to proceed on the merits.

1

## FACTUAL BACKGROUND

Benjamin Armstrong was served with the Complaint in this matter on March 28, 2025, while he was incarcerated in Volusia County Jail as a "FUGITIVE F/ JUSTICE" with "NO BOND." (Exhibit A) At that time, he was unable to respond due to the constraints of incarceration. On April 21, 2025, Mr. Armstrong filed a motion for continuance explaining that he had been incarcerated since March 25, 2025, and that he would be entering an in-patient mental health facility following a 70-day sanction. The Court granted an extension until May 2, 2025, for Mr. Armstrong to respond. However, he did not file a response by that deadline, and the Clerk entered default against him on May 6, 2025.

On July 2, 2025, Mr. Armstrong was formally diagnosed by a licensed physician with Bipolar disorder (unspecified), Narcissistic personality disorder, and Dissociative identity disorder. (Exhibit B) The physician certified that Mr. Armstrong requires placement in a 24-hour residential treatment program due to the severity of his conditions and the need for continuous monitoring. These mental health issues significantly impaired Mr. Armstrong's ability to understand and respond to the legal proceedings during the relevant time period.

Since receiving treatment, Mr. Armstrong has made progress and is now competent to participate in the litigation and present a defense. The underlying defamation claims require Plaintiff to prove actual malice, a subjective intent standard that Mr. Armstrong's mental health conditions may negate. Mr. Armstrong asserts that he has meritorious defenses to the claims and

that setting aside the default judgment will not prejudice Plaintiff, who has not yet proceeded to a damages hearing scheduled for October 24, 2025.

## ARGUMENT
### LEGAL STANDARD FOR SETTING ASIDE DEFAULT JUDGMENTS

Federal Rule of Civil Procedure 55(c) provides that a court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b). USCS Fed Rules Civ Proc R 55. Under Rule 60(b)(1), the court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201. Additionally, Rule 60(b)(6) allows relief for "any other reason justifying relief from the operation of the judgment." African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201.

In the Eleventh Circuit, to have a default judgment set aside, a defendant must show: (1) a meritorious defense, (2) that the plaintiff would not be prejudiced if the judgment were set aside, and (3) a good reason for failing to respond to the complaint. Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, Sloss Indus. Corp. v. Eurisol, 488 F.3d 922. The determination of what constitutes excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." Valdez v. Feltman (In re Worldwide Web Sys.), 328 F.3d 1291. While the absence of prejudice to the nonmoving party and the interest of efficient judicial administration are of "primary importance," all three elements must be considered. Valdez v. Feltman (In re Worldwide Web Sys.), 328 F.3d 1291.

The Supreme Court in Pioneer Investment Services identified four factors pertinent to evaluating excusable neglect: (1) the danger of prejudice to the opposing party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. Safari Programs, Inc. v. CollectA Int'l Ltd., 686 Fed. Appx. 737. Excusable neglect encompasses situations of negligence within the defaulting party's control. Coniglio v. Bank of Am., N.A., 638 Fed. Appx. 972.

The Eleventh Circuit has consistently expressed a "strong preference that cases be heard on the merits" and "strives to afford a litigant his or her day in court, if possible." Perez v. Wells Fargo N.A., 774 F.3d 1329. This preference reflects the fundamental principle that justice is best served when parties have their day in court.

## ARMSTRONG'S FAILURE TO RESPOND CONSTITUTES EXCUSABLE NEGLECT UNDER RULE 60(B)(1)

### Armstrong Has Good Cause for His Failure to Respond

Armstrong's failure to respond to the complaint was not due to willful neglect or disregard for judicial proceedings. Rather, his failure to respond was due to two extraordinary circumstances beyond his control: his incarceration and his serious mental health conditions.

First, Armstrong was incarcerated in Volusia County Jail when he was served with the complaint on March 28, 2025. Despite his incarceration, he managed to file a motion for continuance on April 21, 2025, demonstrating his awareness of the lawsuit and desire to

participate. The court granted an extension until May 2, 2025, but Armstrong was still suffering with mental issues as evidenced by the medical diagnosis.

Second, Armstrong suffers from serious mental health conditions that were formally diagnosed on July 2, 2025. These conditions—Bipolar disorder (unspecified), Narcissistic personality disorder, and Dissociative identity disorder—significantly impaired his ability to understand and respond appropriately to the legal proceedings. A physician certified that Armstrong requires placement in a 24-hour residential treatment program as he "cannot be adequately served in a program with less than 24-hour supervision." The severity of these conditions is evidenced by the need for 24-hour supervision and residential treatment.

The determination of excusable neglect requires inquiry into causation rather than consequences. Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380. In Armstrong's case, the cause of his failure to respond was his incarceration and mental health conditions, not willful neglect or disregard for court procedures.

## Armstrong's Motion Is Timely

Armstrong's motion is timely for several reasons. First, it has been filed well within the one-year limit prescribed by Rule 60(c)(1). Second, Armstrong has only recently recovered sufficiently to present his defense. Third, the damages hearing has not yet occurred, meaning that the default judgment is not yet final in terms of the relief awarded. Fourth, O'Leary will not be prejudiced by the timing of this motion, as discussed below.

## Setting Aside the Default Would Not Prejudice O'Leary

Setting aside the default judgment would not prejudice O'Leary. The Eleventh Circuit has recognized that there is a "strong policy of determining cases on their merits" that must be balanced with "the desire to preserve the finality of judgments." Valdez v. Feltman (In re Worldwide Web Sys.), 328 F.3d 1291. Here, where no final determination of damages has been made, the balance strongly favors setting aside the default judgment.

## The Pioneer Factors Support Finding Excusable Neglect

Applying the Pioneer factors further supports a finding of excusable neglect:

Danger of Prejudice to O'Leary: As discussed above, setting aside the default judgment would not unduly prejudice O'Leary, as the damages hearing has not yet occurred.

Length of Delay and Impact on Judicial Proceedings: The delay in this case is minimal and would not significantly impact judicial proceedings.

Reason for Delay: Armstrong's incarceration and serious mental health conditions provide compelling reasons for his failure to respond. These circumstances were largely beyond his control and significantly impaired his ability to participate in the legal process.

Good Faith: Armstrong demonstrated good faith by filing a motion for continuance on April 21, 2025, informing the court of his incarceration and upcoming mental health treatment.

This action shows that Armstrong was not ignoring the lawsuit but was attempting to participate despite his significant limitations.

The combination of Armstrong's incarceration and severe mental health conditions presents a compelling case for excusable neglect under Rule 60(b)(1).

## ARMSTRONG HAS POTENTIALLY MERITORIOUS DEFENSES TO THE DEFAMATION CLAIMS

### The Actual Malice Standard for Public Figure Defamation Claims

Because Kevin O'Leary is a public figure, he cannot recover damages for defamation unless he proves by clear and convincing evidence that Armstrong published the allegedly defamatory statements with "actual malice." Masson v. New Yorker Magazine, 501 U.S. 496, Dershowitz v. CNN, Inc., 153 F.4th 1189. The Supreme Court in New York Times Co. v. Sullivan established that actual malice requires proof that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." Masson v. New Yorker Magazine, 501 U.S. 496.

Critically, actual malice is a subjective test. It requires showing that the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." Moore v. Cecil, 109 F.4th 1352. The test "is not an objective one and the beliefs or actions of a reasonable person are irrelevant." Moore v. Cecil, 109 F.4th 1352. Instead, the plaintiff must demonstrate that the defendant "in fact entertained serious doubts as to the truth" of the publication. Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc., 6 F.4th 1247.

7

The Eleventh Circuit has emphasized that actual malice "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." Berisha v. Lawson, 973 F.3d 1304. Even an "extreme departure from professional [publishing] standards" does not necessarily constitute actual malice. Berisha v. Lawson, 973 F.3d 1304.

It is also important to note that actual malice should not be confused with ill-will, improper motive, or personal animosity. Moore v. Cecil, 109 F.4th 1352, Masson v. New Yorker Magazine, 501 U.S. 496. The Supreme Court has clarified that "actual malice under the New York Times standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." Masson v. New Yorker Magazine, 501 U.S. 496. What matters are the speaker's subjective beliefs about the truth of their own statements, not their feelings about the subject. Dershowitz v. CNN, Inc., 153 F.4th 1189.

### Armstrong's Mental Health Conditions as a Potentially Meritorious Defense

Armstrong's diagnosed mental health conditions—Bipolar disorder, Narcissistic personality disorder, and Dissociative identity disorder—provide a potentially meritorious defense to O'Leary's defamation claims by potentially negating the subjective mental state required for actual malice.

Bipolar disorder can cause manic episodes characterized by impulsivity, grandiosity, and poor judgment. These symptoms could significantly affect Armstrong's ability to form the requisite mental state for actual malice. During manic episodes, individuals may experience an inflated sense of self-importance and make impulsive statements without the capacity to entertain serious doubts about their veracity.

The actual malice standard requires that the defendant "in fact entertained serious doubts as to the truth of his publication." Masson v. New Yorker Magazine, 501 U.S. 496. If Armstrong was experiencing a manic episode when making the statements about O'Leary, he may have been psychologically incapable of entertaining such doubts, regardless of the objective falsity of his claims.

Armstrong's diagnosis of Dissociative identity disorder (DID) presents another potentially meritorious defense to the actual malice element. DID involves disruptions in identity characterized by two or more distinct personality states, which can affect a person's awareness of their actions and statements.

The Supreme Court has established that actual malice requires the plaintiff to demonstrate that the defendant published the defamatory statement with "knowledge that it was false or with reckless disregard of whether it was false or not." Masson v. New Yorker Magazine, 501 U.S. 496. Armstrong's DID could have impaired his ability to maintain consistent awareness of factual information, including his knowledge of the true circumstances of O'Leary's boating accident. If Armstrong was experiencing dissociative symptoms when making the statements, he may not have had the subjective awareness necessary to knowingly make false statements or to act with reckless disregard for their truth.

The severity of Armstrong's mental health conditions is evidenced by a physician's certification that he requires placement in a 24-hour residential treatment program, as he "cannot be adequately served in a program with less than 24-hour supervision." This medical assessment demonstrates that Armstrong's conditions were serious enough to significantly impair his functioning and potentially his ability to form the subjective mental state required for actual malice.

## THE INTERESTS OF JUSTICE AND JUDICIAL ECONOMY FAVOR SETTING ASIDE THE DEFAULT JUDGMENT

The interests of justice strongly favor setting aside the default judgment in this case. As noted above, the Eleventh Circuit has a "strong policy of determining cases on their merits." Valdez v. Feltman (In re Worldwide Web Sys.), 328 F.3d 1291. This policy is particularly important in cases like this one, where the defendant's failure to respond was due to circumstances beyond his control—specifically, incarceration and serious mental health conditions requiring residential treatment.

Moreover, the Supreme Court has recognized that actual malice "is a subjective test, requiring the plaintiff to show that the defendant 'actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.'" Moore v. Cecil, 109 F.4th 1352. Armstrong's mental health conditions are directly relevant to this subjective inquiry. Justice requires that Armstrong have the opportunity to present evidence regarding how his mental health conditions affected his subjective state of mind.

Judicial economy is also better served by resolving this case on its merits now, rather than potentially facing appeals or subsequent challenges to the default judgment based on Armstrong's mental health conditions. If the default judgment stands, Armstrong may later seek to challenge it on grounds related to his mental capacity at the time of the default. Resolving these issues now would be more efficient than addressing them in subsequent proceedings.

Furthermore, Armstrong is not seeking to delay the proceedings but rather to participate meaningfully in them now that he has recovered sufficiently to do so. Allowing Armstrong to present his defenses now would promote the efficient resolution of this case on its merits.

## CONCLUSION

For the foregoing reasons, Defendant Benjamin Armstrong respectfully requests that this Court grant his motion to set aside the default judgment entered against him and permit him to file a responsive pleading and defend this action on the merits.

Respectfully submitted,

<div style="text-align:right">

Benjamin Armstrong
/s/ Benjamin Armstrong
624 6th Ave S
Nampa, ID 83651

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on ~~December~~ JANUARY 6, 2025 4, I electronically or by mail filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that this document is being served this day on Plaintiffs via U.S. mail at the following address:

Jeffrey A. Neiman, Esq.

Florida Bar No. 544469

jneiman@mnrlawfirm.com

Brandon S. Floch, Esq.

Florida Bar No. 125218

bfloch@mnrlawfirm.com

<div style="text-align: right;">
Benjamin Armstrong<br>
/s/ Benjamin Armstrong<br>
624 6th Ave S<br>
Nampa, ID 83651
</div>

# EXHIBIT A

# EXHIBIT A



## Inmate Information For: BENJAMIN ARMSTRONG

| Inmate Id # | Booking # | Booking Date | Release Date | | |
|---|---|---|---|---|---|
| 991248 | 1157104 | 03/25/2025 19:18 | 04/10/2025 18:53 | | |

| Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|
| ARMSTRONG | BENJAMIN | CHARLES | |

| City | ST | Zip Code |
|---|---|---|
| ACKWORTH | GA | |

| Age | Race | Sex |
|---|---|---|
| 43 | W | M |



Return to Search Page

**Charge Information**

| Charge # | Statute | Statute Description | Bond Type | Bond Amount | Bond # | Arrest Case # | Court Case # | Disposition | Charge Status | Other Statute | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 941.02 | FUGITIVE F/ JUSTICE | NO BOND | $0.00 | 1 | DB250004385 | 2025 000565 XXDB | | OUTSTATE | | |
| 1 | | | | | | | | | | | |

**Alias Information**
**Scars, Marks, and Tattoos**
**Booking History**
Return to Search Page

# EXHIBIT B

Benjamin Armstrong MR# LWC-2025-138 DOB: 10/27/1982

# Benjamin Armstrong ♂ LWC-2025-138

Birthdate: 10/27/1982
Allergies: No Known Allergies/NKA
Admission: 07/01/2025  Care Team
Location: Lenape Wellness Center
  (GMT-05:00) America/New_York

## Physician Certification

### Physician Certification Form

**Diagnosis:**

I hereby certify that the patient named above has been diagnosed with a mental illness according to the Diagnostic and Statistical Manual of Mental Disorders (DSM) and the International Classification of Diseases (ICD-10) code, as indicated below:

Diagnoses

F31.9 Bipolar disorder, unspecified, F60.81 Narcissistic personality disorder, F44.81 Dissociative identity disorder

**Certification of Treatment Needs:**

After thorough evaluation, I certify that the patient:
1. **Does not require hospitalization** at this time.
2. **Cannot be adequately served in a program with less than 24-hour supervision** due to their ongoing need for intensive treatment and continuous monitoring.
3. **Requires placement in a 24-hour residential treatment program** to ensure their safety and the effectiveness of the treatment plan, as the patient's condition warrants structured care beyond the scope of outpatient or part-time programs.

*[signature]*

Robert Matylewicz, DO (Staff), NPI Number 1629057492, DEA BM5610628, 07/02/2025 11:17 AM

The UPS Store RFID Label
Tracking #
1ZA82C20033913 0444
Sealed
ASHELEY GIANUZZI
(425) 221-8139
THE UPS STORE #3877
STE 110
6175 HICKORY FLAT HWY
CANTON GA 30115-7210
1 LBS
1 OF 1
SHIP TO: CLERK OF COURT
CLAUDE PEPPER FEDERAL COURT
400 N MIAMI AVE
MIAMI FL 33128-180
REC'D BY ______ D.C.
JAN 08 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI
FL 330 9-03
UPS GROUND
TRACKING #: 1Z A82 C20 03 3913 0444
BILLING: P/P
REF #1: HI